IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JAY AUBREY ISAAC HOLLIS<br>Individually and as Trustee of the<br>JAY AUBREY ISAAC HOLLIS<br>REVOCABLE LIVING TRUST,<br><br>      Plaintiff,<br><br>         v.<br><br>ERIC H. HOLDER, JR., Attorney General<br>    Of the United States; B. TODD JONES,<br>    Director of the Bureau of Alcohol Tobacco<br>    Firearm and Explosives,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No.3:14-cv-03872 |

---

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

---

**NOW COMES** Plaintiff Jay Aubrey Isaac Hollis, Individually and as Trustee of the Jay Aubrey Isaac Hollis Revocable Living Trust, by and through undersigned counsel, and for his Complaint for Declaratory and Injunctive Relief states as follows:

**INTRODUCTION**

1.      This is an action seeking declaratory and injunctive relief from 18 U.S.C. § 922(o), 26 U.S.C. § 5801 *et seq.* and the implementing regulations 27 C.F.R. § 479.105(a). These statutory and regulatory provisions generally act as an unlawful *de facto* ban on the transfer or possession of a machine gun manufactured after May 19, 1986.  By imposing such a ban on an entire class of weapons, the statutes and regulations exceed the power of the United

States under Article I of the United States Constitution; violate the Second Amendment rights of

the Plaintiff and all similarly situated individuals; violate the Ninth and Tenth Amendments and

the United States Constitution's principles of federalism and dual sovereignty; by arbitrarily

"disapproving" an already approved Form 1, Defendants' actions violate Plaintiff's Fifth

Amendment right to due process and is an unjust taking; and violate the Equal Protection clause

of the Fourteenth Amendment.

2.     Plaintiff seeks declaratory and injunctive relief against the unconstitutional

provisions contained in 18 U.S.C. § 922(o), 26 U.S.C. § 5801 *et seq*. and 27 C.F.R. § 479.105(a);

declaring the ban on machine guns unconstitutional under the Second, Ninth and Tenth

Amendments and in violation of Article I of the United States Constitution and declaratory and

injunctive relief prohibiting Defendants from unjustly taking property without Due Process.

3.     In the alternative, Plaintiff seeks declaratory and injunctive relief finding that 18

U.S.C. § 922(o) does not prohibit an unincorporated trust from manufacturing or possessing a

machinegun manufactured after May 19, 1986 and/or that the Defendants lack the authority and

are thus prohibited from revoking or denying the validity of Plaintiff's approved tax stamp #

RM34755.

## PARTIES

4.     Plaintiff Jay Aubrey Isaac Hollis ("Hollis") is an adult male citizen of the State of

Texas and is the Trustee of the Jay Aubrey Isaac Hollis Revocable Living Trust which is created

and existing under the laws of the State of Texas.

5.     Defendant Eric H. Holder, Jr. is sued in his official capacity as the Attorney

General of the United States of America.  As Attorney General, Defendant Holder is responsible

for administering and executing the laws, customs, practices and policies of the United States, and is currently enforcing the laws, customs, practices and policies complained of in this action.

6.      Defendant B. Todd Jones is sued in his official capacity as the Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATFE").  As Director of BATFE, Defendant Jones is responsible for administering and executing the laws, customs, practices and policies of the United States, and is currently enforcing the laws, customs, practices and policies complained of in this action.

## JURISDICTION AND VENUE

7.      The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§1331, 1343, 1346, because this action arises under the Constitution and laws of the United States and further has jurisdiction to render declaratory relief under 28 U.S.C. §§ 2201 and 2202.

8.      Venue is proper in this district pursuant 28 U.S.C. § 1931(e)(1)(C) because no real property is involved, the Plaintiff resides in Texas and the defendants are agencies of the United States or officers thereof acting in their official capacity and 28 U.S.C. § 1931(e)(1)(B) as a substantial part of the events and omissions giving rise to the claim occurred in this judicial district.

## FACTUAL ALLEGATIONS

9.      The Second Amendment states, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The right preserved by the Second Amendment requires that it be subject to the highest standard of review, and it plainly commands its own standard:  *shall not be infringed*.

10.     The Second Amendment guarantees "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *District of Columbia v. Heller*, 554 U.S. 570, 635, 128 S.Ct. 2783, 2821, 171 L.Ed.2d. 637, 683 (2008).   In addition, *Heller* also held that the Second Amendment guarantees not only an individual right to bear arms unconnected with militia service but that it "extends, prima facie, to all instruments that constitute bearable arms." *Id*. at 582, 2792.

11.     The scope of the Second Amendment protection does not end with *Heller*, as *Heller* is merely the floor and not the ceiling.  In *McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010), the Second Amendment was incorporated against the States by the Fourteenth Amendment to the United States Constitution.

12.     Prior to *Heller* and *McDonald*, the seminal case regarding the Second Amendment was decided in 1939.  In *U.S. v. Miller*, 307 U.S. 174 (1939), Jack Miller was indicted for transporting, in interstate commerce, a shotgun with a barrel length less than eighteen inches in length, in violation of the National Firearms Act.  The District Court dismissed the indictment on Second Amendment grounds, but the Supreme Court of the United States reversed and remanded for further proceedings.  In its opinion, the Supreme Court stated

> [i]n the absence of any evidence tending to show that possession or use of a 'shotgun having a barrel of less than eighteen inches in length' at this time has some reasonable relationship to the preservation or efficiency of a well regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument. Certainly it is not within judicial notice that this weapon is any part of the ordinary military equipment or that its use could contribute to the common defense.

*Miller*, 307 U.S. at 178 (citing *Aymette v. State of Tennessee*, 2 Humph., Tenn 154, 158).

13.     As judicial notice can readily be taken that machineguns are in fact "part of the ordinary military equipment" and their use "contribute to the common defense" due to all

branches of the military, the National Guard, federal agencies (including the United States Department of Agriculture)[1], and even local police forces utilizing machineguns commonly, it is clear the machineguns come under Second Amendment protection as expounded in *Miller*.

14.    Machineguns are regulated under the National Firearms Act ("NFA"), codified at 26 U.S.C. § 5801 *et seq*.  The NFA imposes a $200 tax on the manufacture and transfer of machineguns, suppressors, short barreled rifles, short barreled shotguns and destructive devices. It additionally imposes a $5 tax on "any other weapons" which are defined to include pen guns, cane guns and other firearms that do not resemble actual firearms.

15.    It is no secret that even though the NFA imposed a tax on certain firearms, the goal of the NFA was not one of raising revenue.   BATFE acknowledges that the NFA's "underlying purpose was to curtail, if not prohibit, transactions in NFA firearms."[2]   Since Congress lacks authority to ban NFA weapons outright, it instead imposed a large tax (in 1934 dollars) on their manufacture and transfer which few individuals could pay.

16.    Under the NFA, a person must submit a written application to make and register the firearm, pay any tax associated with that making, identify the firearm to be made, identify the person making and obtain approval from the Secretary on the written application.   Upon approval of the application, the BATFE will register the firearm in the National Firearms Registration and Transfer record and affix a stamp to the application to evidence the payment of the tax. *See* 26 U.S.C. § 5822.  The statute also states that "[a]pplications shall be denied if the

---

[1] "The U.S. Department of Agriculture, Office of Inspector General, located in Washington, DC, pursuant to the authority of FAR Part 13, has a requirement for the commerical (sic) acquisition of submachine guns, .40 Cal. S&W, ambidextrous safety, semi-automatic or 2 shot burts (sic) trigger group, Tritium night sights for front and rear, rails for attachment of flashlight (front under fore grip) and scope (top rear), stock-collapsilbe (sic) or folding, magazine - 30 rd. capacity, sling, light weight, and oversized trigger guard for gloved operation." https://www.fbo.gov/index?s=opportunity&mode=form&id=9fc3a01217d03b0354e1e18b69aa7bad&tab=core&_cview=0 (last accessed October 30, 2014)

[2] See https://www.atf.gov/content/firearms/firearms-industry/national-firearms-act (last accessed October 30, 2014).

making or possession of the firearm would place the person making the firearm in violation of law." *Id*.

17.     Prior to 1986, registered machineguns were involved in so few crimes that the then Director of the Bureau of Alcohol, Tobacco, and Firearms Stephen E. Higgins stated during congressional hearings that "machineguns which are involved in crimes are so minimal so as not to be considered a law enforcement problem."[3]  Despite any evidence of machineguns having any effect on interstate commerce, Congress banned an entire class of firearms that were rarely, if ever, used in crime, merely because it sounded good to ban them.

18.     18 U.S.C. § 922(o) generally bans the transfer or possession of a machinegun manufactured after May 19, 1986.  The statute provides:

> (1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.
> (2) This subsection does not apply with respect to—
> (A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or
> (B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect.

18 U.S.C.A. § 922(o).  This provision was enacted in 1986 as §102(9) of the Firearm Owners' Protection Act, which amended the Gun Control Act of 1968.

19.     The legislative history of this amendment is for the most part nonexistent, except for the mention on the floor by its sponsor, Representative Hughes, when he stated "I do not know why anyone would object to the banning of machine guns."  132 Cong. Rec. H1750 (1986)

---

[3] *Armor Piercing Ammunition and the Criminal Misuse and Availability of Machinguns and Silencers: Hearings on H.R. 641 and Related Bills Before the Subcomm. On Crime of the House Co. on the Judiciary,* 98th Cong. 208 (1986).

(statement of Rep. Hughes). While the House vote on the amendment failed, the amendment still made it in to the final bill.[4]

20.     18 U.S.C. § 922(o) is a criminal statute that has nothing to do with commerce and its terms do not include any jurisdictional element which would allow a determination to be made as to whether the mere possession of a machinegun effects interstate commerce.  In fact, not only were there not any Congressional findings of an effect on interstate commerce, all evidence, including the statements of the then ATF Director shows that indeed, machineguns have *no effect* on interstate commerce.

21.     Likewise, while the ban criminalizes the possession and transferring of a post-1986 machinegun, one can in fact *possess* a machinegun without *transferring* it so that the transfer would not precede the possession (for example, an individual could make a machinegun).

22.     The prohibition on machineguns does not apply to all machineguns.   Any machinegun lawfully owned before May 19, 1986 may still be transferred or possessed. Accordingly, there are thousands, if not hundreds of thousands of machineguns lawfully possessed by private individuals, and, but for 922(o), there would likely be hundreds of thousands more lawfully possessed by private individuals.   In fact, one of the most popular sporting rifles in existence today, the AR-15 rifle, is merely a semi-automatic version of the M16 machinegun, and is nearly identical to the fully automatic version except for some of the internal parts and additional milling.

23.     The BATFE has essentially rewritten § 922(o) to make it less onerous on the government.  As written, § 922(o) permits only governmental entities and those not included in

---

[4] See Floor Vote on Hughes Amendment: https://www.youtube.com/watch?v=a6Mx2UcSEvQ (last accessed October 30, 2014).

the definition of "person" from possessing a machinegun manufactured after May 19, 1986. Coincidentally, governmental entities do not manufacture machineguns but rather purchases them from civilian companies, which are included in the definition of "person." If the statute is applied as written, no machinegun could be manufactured by a civilian company even for government or law enforcement because the company as well as anyone in the company would be prohibited from possessing or transferring that machinegun. The same applies to licensed firearms dealers, who the BATFE permits to possess post May 19,1986 machineguns if they have a letter from a law enforcement agency requesting a demonstration or a "sample," despite no exception being present in the law to permit licensed firearms dealers to possess machineguns even for law enforcement purposes.

24.     The term "person" is defined in the Gun Control Act ("GCA") to mean "any individual, corporation, company, association, firm, partnership, society, or joint stock company." *See* 18 U.S.C. § 921. The term person does not include an unincorporated trust.

25.     The BATFE, in an opinion letter dated March 17, 2014 to Dakota Silencer in Sioux Falls, South Dakota, referenced the "person" definition and stated: "[u]nlike individuals, corporations, partnerships, and associations; unincorporated trusts do not fall within the definition of "person" in the GCA." *See* Exhibit A, P.2. Since by the BATFE's own admission, the term "person" in the GCA does not include an unincorporated trust, such a trust is not subject to the prohibition in § 922(o).

26.     The "making" of a machinegun can be done without subjecting the firearm to interstate commerce. A machinegun made in the State of Texas and that has not traveled in interstate commerce cannot be regulated by the Federal Government under the interstate commerce clause.

27.     Since *Heller* declared the Second Amendment an individual right, and that the right extends to all "bearable arms," including those regulated by the NFA, the NFA's tax is is unconstitutional, just as a poll tax, a tax to exercise one's religion, or even a tax assessed on printed materials before one could exercise his or her First Amendment rights would be unconstitutional as well.

28.     Congress cannot ban the possession of machineguns without specific findings regarding the effects of machineguns on interstate commerce.  As there is no substantial effect on interstate commerce when an individual (or a trust) makes a machinegun, the complete ban of this class of weapons is unconstitutional.  The ban additionally violates the Second Amendment rights of law abiding citizens.

29.     During the congressional hearings on the NFA in 1934, Attorney General Homer S. Cummings explained that Congress could not simply ban machine guns because Congress had "no inherent police power to [make law concerning] local crime." *National Firearms Act of 1934: Hearings Before the House Committee on Ways and Means,* 73rd Cong., 2d Sess. 8 (1934).  The only way for Congress to regulate machineguns was through Congress' power to tax. *Id*. at 6.

30.     Additionally, a machinegun is not inherently dangerous and generally no more dangerous than a semi-automatic firearm, nor is it an unusual weapon as machineguns are in common usage in a wide variety of applications to include law enforcement and civilian ownership.

31.     The NFA has existed and has been a direct tax on a constitutional right for approximately eighty years.  Law abiding citizens, like the Plaintiff, whom desire to manufacture and own these types of arms are not the types of individuals that use these arms in crimes.  In

fact, lawfully registered machineguns have rarely been used in crime.  Upon information and belief, there are only two known lawfully registered machineguns which have ever been used in a crime, one of which was used by a law enforcement officer.

32.      But even if Congress has the power to regulate a machinegun under the commerce clause, Congress has ceased regulating post May 19, 1986 machineguns but has instead banned their transfer or possession.  Banning a class of firearms is not "regulating" under the meaning of the commerce clause, especially in light of the protected Second Amendment rights associated with keeping and bearing arms.

33.      The May 19, 1986 ban on machineguns serves no purpose other than to frustrate Plaintiff's (and other law abiding citizens) exercising of his Second Amendment rights.

34.      Further, § 922(o) repeals portions of the NFA because the BATFE will generally not accept payment of that tax.

35.      In *USA v. Rock Island Armory, Inc.*, 773 F.Supp. 117, 119 (C.D.Ill.1991), the United States District Court for the Central District of Illinois held that "As applied to machineguns made and possessed after May 19, 1986, the registration and other requirements of the National Firearms Act, Chapter 53 of the Internal Revenue Code, no longer serve any revenue purpose, and are impliedly repealed or are unconstitutional."

36.      The District Court went on to say that "no federal jurisdiction exists to ban mere possession of machineguns, and the NFA provisions at issue are not supported by the tax power to the extent they enforce a prohibition rather than taxation."  Yet that is exactly what has happened; an entire class of arms has been banned, down to the simple intrastate possession.

37.      On or about May 14, 2014, Plaintiff, as Trustee of the Jay Aubrey Isaac Hollis Revocable Living Trust, submitted an application on ATF Form 5320.1 (this form is referred to in the industry as a "Form 1") to make a machinegun.  Along with the Form 1, Plaintiff

submitted a cover letter and the Dakota Silencer opinion. See Exhibit "B."  Plaintiff also submitted the required $200 making tax.  This application was submitted  in paper form.

38.     On September 8, 2014, the application was approved by the BATFE to make a machinegun, the stamp was affixed to the Form 1, and the Form 1 was returned to the Plaintiff authorizing him to make a machinegun.  A true and correct copy of the approved application is attached hereto, made a part hereof, and marked as Exhibit "C".

39.     On or about September 9, 2014, rumors began to spread that the BATFE was approving Form 1 machinegun applications submitted by trusts.  Although no statutory or regulatory authority exists allowing or authorizing the BATFE to disapprove or revoke an already issued stamp, on or about September 10, 2014, the BATFE contacted the Plaintiff and told him that the approved Form 1 application to make a machinegun was mistakenly approved and was now disapproved.

40.     Plaintiff then received a "disapproved" Form 1 application that had been whited-out and marked disapproved. See Exhibit "D."

41.     A few days later, Special Agent Aaron R. Wheeler, BATFE, Dallas Division, contacted Plaintiff to arrange a time to meet so he could deliver a letter.

42.     The letter, from William J. Boyle, III, Chief of the National Firearms Act Branch, advised Plaintiff that the "[B]ATF[E] may not approve any private person's application to make and register a machinegun after May 19, 1986" and "if you have already made this machinegun, please abandon it to the ATF Special Agent who is delivering this letter to you."  See Exhibit "E."

43.     The letter went on to state:

The fact that an unincorporated trust is not included in the definition of "person" under the GCA does not mean that an individual may avoid liability under section 922(o) by placing a machinegun "in trust."  Where a trust is not an entity

recognized as a "person" under the applicable law, it cannot make or hold property and is disregarded.  Consequently, in terms of an unincorporated trust, ATF must disregard such a non-entity under the GCA and consider the individual acting on behalf of the trust to be the proposed maker/possessor of the machinegun.

*Id*.

44.     The plain language of the statute though does not include a trust in the definition of "person," and therefore, there is no prohibition on trusts from making or possessing machineguns under 922(o).  The BATFE's explanation does not comport with the statutory law defining the term "person" under the GCA, its decision to disregard the plain language of that statute is ultra vires, and it is rationale that where a trust is not included in the definition of "person" in the law, the trust form must be disregarded and cannot hold property has no basis in the law.  Simply put, the BATFE has no authority to rewrite 922(o) to fit its wishes and its actions in doing so are ultra vires.

45.     Likewise, the BATFE's claim that it "must disregard such a non-entity under the GCA and consider the individual acting on behalf of the trust to be the proposed maker/possessor of the machinegun" is equally troubling in that this new interpretation upends what has been common practice in the past.  For instance, when a trust manufactures an NFA firearm on a Form 1 (as is commonly done to make short barreled rifles), it is required to engrave on that item certain information including the trust name, not the name of the trustee who physically makes the firearm.

46.     27 C.F.R. §479.102(a)(2)(iv) states, in part, that "[y]ou, as a manufacturer, importer, or maker of a firearm, must legibly identify the firearm as follows … In the case of a domestically made firearm, the city and State … where you as the manufacturer maintain your place of business, or where you, as the maker, made the firearm…"  If the BATFE takes the position that now a trust is a "disregarded entity" and now considers the "person acting on behalf

of the trust to be the proposed maker," then any person that engraved the trust name on the made firearm will be in violation of BATFEs new policy.

47.     The Plaintiff complied with the unconstitutional mandates by the BATFE regarding making an application to manufacture a machinegun, paid the unconstitutional tax associated with that application to exercise his right to keep and bear arms, and has had his Second Amendment rights violated and his property interest in a lawfully applied for and approved machinegun destroyed when the BATFE decided to unilaterally, arbitrarily and capriciously revoke his approval.

48.     Also, as the Form 1 was approved by the BATFE, Plaintiff, as Trustee of the Jay Aubrey Isaac Hollis Revocable Living Trust can make and possess a machinegun under the plain language of 18 U.S.C. § 922(o), which states in part "… possession by or under the authority of, the United States or any department or agency thereof…" as the BATFE is clearly an agency of the United States and the BATFE approved Plaintiff's Form 1 to make a machinegun.

49.     Upon information and belief, the BATFE has transferred post-May 19, 1986 machineguns on Form 4s and/or Form 5s for various individuals and has allowed other individuals to manufacture machineguns on Form 1s after May 19, 1986.

## COUNT I
## VIOLATION OF THE SECOND AMENDMENT RIGHT
## TO KEEP AND BEAR ARMS

50.     Plaintiff incorporates each and every paragraph as if copied in full hereafter.

51.     The machinegun ban in § 922(o) and associated regulations violate Plaintiff's Second Amendment rights.

52.     The NFA and its associated regulations violate Plaintiff's Second Amendment rights as it mandates the paying of a tax to exercise a constitutionally protected right akin to a poll tax.

53.     Plaintiff desires to own machineguns for all lawful purposes and for use in defense of hearth and home.

54.     Plaintiff was initially approved to manufacture a machinegun by the authority of the BATFE.  Plaintiff's Second Amendment rights are violated by the threat of legal action by the BATFE subsequently disapproving an already approved Form 1 application and placing him in legal jeopardy under unconstitutional statutes and regulations.

55.     Additionally, Plaintiff's Second Amendment rights are violated by the BATFE disapproving his Form 1 to make a machinegun under his trust.

56.     Plaintiff is entitled to declaratory and injunctive relief barring defendants from attempting to unilaterally revoke an already issued stamp on his Form 1 and further, that 18 U.S.C. § 922(o) and 26 U.S.C. § 5801 *et seq.* are unconstitutional or unconstitutional as applied against Plaintiff.

## COUNT II
## VIOLATION OF ARTICLE I OF THE UNITED STATES CONSTITUTION

57.      Plaintiff incorporates each and every paragraph as if copied in full hereafter.

58.     Congress has the authority "To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes…" U.S. Const. art. I, § 8, cl. 3.

59.     The Commerce Clause does not supersede the Second Amendment, and Congress is without power to inject itself into matters generally reserved to the States under the Ninth and Tenth Amendments.

60.     The machineguns made from an application on a Form 1 do not necessarily have to transfer in interstate commerce and can be made wholly within the state of residence.

61.     As machineguns do not pose a substantial effect on interstate commerce, Congress cannot rely on the Commerce Clause to ban machineguns, and therefore 18 U.S.C. § 922(o) and its accompanying regulations are unconstitutional.

62.     Plaintiff is entitled to declaratory and injunctive relief barring defendants from attempting to unilaterally revoke an already issued stamp on his Form 1 and further, that 18 U.S.C. § 922(o) is unconstitutional or unconstitutional as applied against Plaintiff.


### COUNT III
### VIOLATION OF THE FIFTH AMENDMENT OF
### THE UNITED STATES CONSTITUTION

63.      Plaintiff incorporates each and every paragraph as if copied in full hereafter.

64.     The Fifth Amendment states, in part, "No person shall be … be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V.

65.      By attempting to unilaterally revoke an already issued tax stamp and approval to make a machinegun, Defendants have attempted to deprive Plaintiff, individually and as Trustee of the Jay Aubrey Isaac Hollis Revocable Living Trust of his property interest in that approved stamp and machinegun that could have been made pursuant to the BATFE's authorization.


### COUNT IV
### VIOLATION OF THE FOURTEENTH AMENDMENT – EQUAL PROTECTION

66.     Plaintiff incorporates each and every paragraph as if copied in full hereafter.

67.     Upon information and belief, BATFE has approved the manufacture and transfer of post-1986 machineguns to various individuals.

68.    Permitting others to possess and/or manufacture post-1986 machineguns, but not Plaintiff, violates Plaintiff's equal protection rights and the Fourteenth Amendment's Equal Protection clause.

**Wherefore**, Plaintiff respectfully prays that judgment be entered in his favor and against Defendants as follows:

1.    A declaration that 18 U.S.C. § 922(o) and 26 U.S.C. § 5801 *et seq.* are unconstitutional;

2.    A declaration that 18 U.S.C. § 922(o) and 26 U.S.C. § 5801 *et seq.* cannot be applied against Plaintiff individually or as Trustee of the Jay Aubrey Isaac Hollis Revocable Living Trust;

3.    A declaration that 18 U.S.C. § 922(o) and 26 U.S.C. § 5801 *et seq.* cannot be applied against any current or future trustees or current or future beneficiaries of the Jay Aubrey Isaac Hollis Revocable Living Trust;

4.    A declaration that 18 U.S.C. § 922(o) and 26 U.S.C. § 5801 *et seq.* violate the Second Amendment to the United States Constitution;

5.    A declaration that the Defendants' actions in attempting to unilaterally revoke an issued tax stamp are void and without authority;

6.    An order permanently enjoining Defendants, their officers, agents, employees, servants and all other persons acting in concert or participation with them who receive actual notice of the injunction, from enforcing 18 U.S.C. § 922(o) and 26 U.S.C. § 5801 *et seq.* and their accompanying regulations, against Plaintiff individually and as Trustee of the Jay Aubrey Isaac Hollis Revocable Living Trust or any current or future trustees and beneficiaries of said Jay Aubrey Isaac Hollis Revocable Living Trust;

7.   In the alternative, a declaration that 18 U.S.C. § 922(o) does not prohibit unincorporated trusts from manufacturing or possessing machineguns and an accompanying order requiring the Defendants to approve Plaintiff's Form 1 applications and/or an order prohibiting the Defendants from denying the validity of or revoking or disapproving Plaintiff's approved and issued tax stamp # RM34755.

8.   Costs of suit;

9.   Attorneys' Fees and Costs pursuant to 28 U.S.C. § 2412; and

10. Any other further relief as the Court deems just and appropriate.

This, the  30th  day of October, 2014.

Respectfully submitted,

/s Stephen D. Stamboulieh

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
Northern District of Texas No. 102784MS
MS Bar No. 102784

Attorney for the Plaintiff

**Of Counsel:**
Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 4008
Madison, MS  39130
(601) 852-3440
stephen@sdslaw.us
Northern District of Texas No.102784MS
MS Bar No. 102784